# In the United States Court of Federal Claims

No. 12-57 C

(Filed April 30, 2014)

**UNPUBLISHED**

| | |
|---|---|
| * * * * * * * * * * * * * * ** * | |
| GROUND IMPROVEMENT TECHNIQUES, INC., for the use and benefit of the secured creditors of GROUND IMPROVEMENT TECHNIQUES, INC.; and, MK FERGUSON COMPANY, for the use and benefit of GROUND IMPROVEMENT TECHNIQUES, INC., | RCFC 17(a); Real Parties in Interest for Claims Transferred to Creditors in Bankruptcy Case; Neither Mandatory Nor Permissive Joinder Under Rules 19 and 20 Applies; Substitution of Real Parties in Interest and Counsel Granted. |
| *Plaintiffs*, | |
| v. | |
| THE UNITED STATES, | |
| *Defendant*.[1] | |
| * * * * * * * * * * * * * * * * | |

*Robert G. Barbour*, McLean, VA, for plaintiffs (the real parties in interest).

*Steven R. Schooley*, Orlando, FL, counsel for plaintiffs (the nominal plaintiffs). *Frederick Huff*, Littleton, CO, of counsel for plaintiffs (the nominal plaintiffs).

---

[1]/ Defendant did not participate in the motions resolved in this opinion. The caption of this case has been corrected to reflect the court's ruling in this opinion and order.

_____

## OPINION AND ORDER

_____

**Bush**, *Senior Judge*.

  The court has before it cross-motions which contest the issue of the proper entities to advance claims for plaintiffs, as well as the choice of counsel to represent plaintiffs. The titles of the motions are not of much assistance here, because competing factions claim legitimacy as plaintiffs in this dispute. For the sake of clarity, the court distinguishes between the Real Parties' Motion to Substitute (and the Real Parties' Reply), and the Nominal Plaintiffs' Motion for Ratification/Joinder (and the Nominal Plaintiffs' Reply).[2] On July 12, 2013, the court stayed the cross-motions of these competing factions pending an appeal of prior rulings of this court to the United States Court of Appeals for the Federal Circuit. Subsequently, however, the Federal Circuit stayed the appeal before it to permit a "limited remand" to this court to decide those pending cross-motions regarding the substitution of real parties in interest and counsel. For the reasons stated below, substitution of the real parties in interest is granted, and Mr. Robert G. Barbour is substituted for Mr. Steven R. Schooley to represent plaintiffs in this suit.

## BACKGROUND[3]

### I.   Overview of the Current Dispute

---

  [2]/ The actual titles of these briefs are: (1) Motion to Substitute the Real Parties in Interest/Motion to Substitute Counsel, filed May 24, 2013; (2) Plaintiffs' Ground Improvement Techniques, Inc. and MK-Ferguson Company Response to the Motion to Substitute and Cross-Motion to Ratify Plaintiffs, filed June 7, 2013; (3) Secured Parties' Reply to Response to Motion to Substitute and Response to Cross Motion to Ratify, filed June 14, 2013; and, (4) Plaintiffs' Ground Improvement Techniques, Inc. and MK-Ferguson Company Reply to the Secured Parties' Response to Cross-Motion to Ratify Plaintiffs, filed June 21, 2013. The entities and individuals that are aligned with the factions referenced herein as "Real Parties" and "Nominal Plaintiffs" will be discussed *infra*.

  [3]/ This background information is drawn largely from the parties' filings in this case and does not constitute fact finding by the court.

2

Most of the relevant background for this dispute may be found in *Ground Improvement Techniques, Inc. v. United States*, 108 Fed. Cl. 162 (2012) (*GIT I*) and *Ground Improvement Techniques, Inc. v. United States*, No. 12-57C (Fed. Cl. May 3, 2013) (*GIT II*). Only the facts essential to the dispute currently before the court are presented here. As a threshold observation, the court notes that the Nominal Plaintiffs disagree with the court's prior holdings regarding the real parties in interest to present plaintiffs' claims in this suit. Nominal Plaintiffs' Mot. at 3. Nonetheless, the court's holdings in this regard in *GIT I* and *GIT II* are currently on appeal and are not within the scope of the limited remand from the Federal Circuit. Thus, the primary (and relatively narrow) question currently before the court is whether the real parties in interest identified by the court in *GIT I* and *GIT II* will simply substitute themselves for the Nominal Plaintiffs as the plaintiffs prosecuting this suit, or whether some other configuration of plaintiffs will proceed in this suit. A secondary question is the choice of counsel to represent plaintiffs in this suit.

## II.   Contract Disputes Litigation and Bankruptcy Proceedings

In 1995, Ground Improvement Techniques, Inc. (GIT) became the subcontractor for MK-Ferguson Company (MK) on a United States Department of Energy project in Slick Rock, Colorado (the DOE project) for the remediation of uranium mill tailings.[4] During the course of performance, GIT's subcontract was terminated for default and the termination thereafter became the subject of litigation between MK and GIT in the United States District Court for the District of Colorado (the GIT-MK litigation). During the course of that litigation, which, including various appeals, lasted at least twelve years, GIT filed for bankruptcy under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Western District of Pennsylvania (the GIT bankruptcy litigation).

As a result of GIT's bankruptcy, GIT's claims against MK, except for a dividend of $125,000 for GIT's unsecured creditors, were transferred to five of GIT's creditors (the Secured Parties): PNC Bank, Fireman's Fund Insurance Company, Holland & Knight LLP, The Law Offices of Frederick Huff (Mr. Huff), and R.N. Robinson & Son, Inc. The Secured Parties elected to continue litigation against MK in the name of GIT, rather than directing GIT to assign its claims

---

[4]/ MK has undergone multiple corporate name changes, and will be referred to as MK even in reference to events which occurred after those name changes.

against MK to the Secured Parties. GIT eventually obtained a large judgment against MK, which was partially satisfied by a surety in 2009.

In 2001, MK, too, filed for bankruptcy under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Nevada (the MK bankruptcy litigation). The unsatisfied portion of GIT's judgment against MK, and post-judgment interest, were claims administered in MK's bankruptcy. The bankruptcy court required MK to file a certified claim with DOE to attempt to satisfy GIT's claims against MK related to the DOE project. MK did so, but the certification was contested as inadequate.

The MK bankruptcy court eventually ordered GIT itself to file GIT's claims with DOE's contracting officer under MK's name, and to certify its own claims. GIT also filed a certified claim in its own name with the DOE contracting officer. Having received no response from the contracting officer on its claims, GIT filed a "deemed denied" suit in this court for the claims submitted to the contracting officer in its own name and in MK's name (for the benefit of GIT). Counts I-III of the complaint, claims brought directly by GIT against the United States, were dismissed by this court for lack of privity between GIT (the subcontractor on the DOE project) and the United States. The only remaining claim in this suit (Count IV of the complaint) is the claim in MK's name for the benefit of GIT, a type of claim that is sometimes referred to as a pass-through claim.

### III. This Court's Holding Regarding the Real Parties in Interest Issue

Defendant asserted that GIT was not the real party in interest to bring this suit against the United States for claims related to the DOE Project. The primary thrust of the government's argument was that when GIT went through bankruptcy, any claims it possessed against MK and the United States were transferred to GIT's creditors. Plaintiffs conceded that certain of GIT's creditors might receive some benefit from this suit, but contended that post-bankruptcy GIT would be the major beneficiary of this action.

Defendant's arguments were persuasive, because GIT's bankruptcy effected a transfer of GIT's claims against MK to the Secured Parties. The court cited numerous court documents which showed that the Secured Parties, not GIT, own the claims against MK and the United States. *See GIT I*, 108 Fed. Cl. at 169-70 (citing GIT's Second Amended Plan of Reorganization, a related Agreement

Respecting Litigation, and court orders in the GIT-MK litigation and the MK bankruptcy litigation). Plaintiffs' arguments to the contrary, unsupported by legal authority, were either refuted by the court documents cited by defendant or were irrelevant to the real parties in interest issue. *See id.* at 170-71 (noting that plaintiffs' arguments found no support in court documents, and that GIT's rights to any proceeds from its claims against MK and the United States are now held by the Secured Parties, with any excess to be awarded to GIT's unsecured creditors). The court therefore concluded that GIT's claims against MK are now held by the Secured Parties and that the Secured Parties are the real parties in interest for GIT's claims against MK related to the DOE project, and to any related claims against the United States. *Id.* at 171.

The court held, further, that the Secured Parties are the real parties in interest for the pass-through claim presented in Count IV of the complaint. GIT is merely the nominal plaintiff for the interests of the Secured Parties in the remaining claim in this suit. *Id.* The court therefore ordered GIT to file a notice describing the method by which the real parties in interest would participate in this suit, pursuant to Rule 17(a)(3) of the Rules of the United States Court of Federal Claims (RCFC). Under the rules of this court, to avoid dismissal of a suit the permissible types of participation in litigation for a real party in interest are ratification of the nominal plaintiff, substitution of the real party for the nominal plaintiff, or joinder of the real party. RCFC 17(a).

On February 8, 2013, GIT filed a motion for reconsideration of the court's ruling on the real parties in interest issue, which was accompanied by a notice presenting its position that the Nominal Plaintiffs should continue to represent the interests of the Secured Parties, through ratification. Mr. Barbour also filed documents on February 8, 2013 which were intended to show that the Secured Parties opted for substitution of the real parties in interest as plaintiffs in this suit, and that they rejected ratification of GIT as plaintiff. The court deferred ruling on the substitution issue, and instead issued an opinion on May 3, 2013 denying GIT's motion for reconsideration of the real party in interest holding in *GIT I*. *See GIT II*, slip op. at 8-9.

The parties then briefed the substitution issue. That briefing is now complete and ripe for a ruling. As noted *supra*, the primary dispute concerns control over the litigation of plaintiffs' claims (which were brought in the names of

5

GIT and MK and which will proceed under the names of those nominal plaintiffs).[5] The secondary issue is the choice of counsel to represent plaintiffs' interests.

## DISCUSSION

### I. Requirement that Actions be Brought by the Real Parties in Interest

Aside from certain exceptions not relevant here, "[a]n action must be prosecuted in the name of the real party in interest." RCFC 17(a)(1). This court has stated that "[w]ithin the context of RCFC 17(a), a real party in interest has been defined as the party that 'possesses the right to be enforced.'" *Grass Valley Terrace v. United States*, 69 Fed. Cl. 543, 546 (2006) (citation omitted). When a plaintiff has been determined to not be the real party in interest for a claim, this court may allow that plaintiff a reasonable amount of time to cure the defect, either through substitution of the real party in interest, joinder or ratification. RCFC 17(a)(3); *see Aldridge v. United States*, 59 Fed. Cl. 387, 390 (2004) (requiring the submission of evidence, within a certain period of time, to determine if a bankruptcy trustee had abandoned a claim to the debtor-plaintiff or wished to assert the claim in this court for the benefit of the bankruptcy estate); *see also First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999) (stating that RCFC 17(a) "sets forth the broad and general principle that actions should be brought in the name of the real party in interest and that courts should be lenient in permitting ratification, joinder, or substitution of that party"). Failure to prosecute an action in the name of the real party in interest, unless cured by the methods referenced in RCFC 17(a)(3), will result in the dismissal of the claim.[6] *See, e.g., Norega v. United States*, 113 F. Supp. 463, 464 (Ct. Cl. 1953); *Aldridge*, 59 Fed. Cl. at 390.

### II. The Competing Factions Referenced Herein as "Real Parties" and "Nominal Plaintiffs"

---

[5]/ The caption of this opinion reflects the court's holding in this regard. The Secured Parties are the real parties in interest for this suit, and have been substituted for GIT. GIT and MK remain in the caption merely as nominal plaintiffs for the use and ultimate benefit of the Secured Parties.

[6]/ The court may rely on relevant court documents submitted by the parties to resolve a real party in interest challenge. *GIT I*, 108 Fed. Cl. at 169 n.5.

Since this court issued its real party in interest holding in *GIT I*, there has been an apparent split among the Secured Parties as to whether GIT should remain in control of the prosecution of this suit. To reiterate, the Secured Parties consist of PNC Bank, Fireman's Fund Insurance Company, Holland & Knight LLP, The Law Offices of Frederick Huff (Mr. Huff), and R.N. Robinson & Son, Inc. One faction, which the court designates as the "Nominal Plaintiffs," only has the support, among the Secured Parties, of Mr. Huff. The other faction, which the court references as the "Real Parties," is composed of PNC Bank, Fireman's Fund Insurance Company, and R.N. Robinson & Sons, Inc.[7]

Although of only tangential relevance to this dispute, the Nominal Plaintiffs faction also has the support of Robert E. Kinghorn, who apparently at the time of GIT's bankruptcy held an equity interest of 25% in GIT. *See* Def.'s Br. of Mar. 5, 2013, Ex. 1 at A-14. Mr. Kinghorn is not identified in the briefing currently before the court, but an exhibit attached to the complaint identifies Mr. Kinghorn, at least as of October 28, 2011, as president of GIT. Compl. Ex. 3 at 3.5; *see also* Def.'s Br. of Apr. 3, 2012, Ex. E at 4 n.4 (describing Mr. Kinghorn as one of the "principals" of GIT). In the Nominal Plaintiffs' motion, Mr. Kinghorn is asserted to have "the greatest monetary interest" in this suit, Nominal Plaintiffs' Mot. at 2, and it is further alleged that "[a]lmost all of the unpaid, reimbursable litigation costs for this litigation have been borne solely by Kinghorn," *id.* at 5. Unfortunately for the Nominal Plaintiffs' latest attempt to retain control of this litigation, Mr. Kinghorn possesses no *voting* interest as to the operating decisions regarding the claims presented in this suit - those voting interests are vested solely in the Secured Parties. *See infra*.

**III.   Analysis**

    **A.   The Agreement Respecting Litigation Fully Supports the Real Parties' Motion to Substitute**

The Real Parties note, first, the court's prior holdings in *GIT I* and *GIT II* regarding the transfer to the Secured Parties of plaintiffs' claims arising from the DOE project. Real Parties' Mot. ¶¶ 1-2. The Real Parties further note that:

---

[7]/  Holland & Knight LLP has not been identified as being aligned with either faction in the briefs before the court.

> Pursuant to GIT's Second Amended Plan of
> Reorganization, the Secured Parties executed an
> Agreement Respecting Litigation that sets forth how the
> net proceeds from GIT's claims against MK will be
> distributed and how decisions regarding the selection of
> counsel and operating decisions in the MK Litigation are
> to be made.

*Id.* ¶ 3 (footnote omitted).  The Real Parties then cite to the relevant paragraphs of the Agreement Respecting Litigation (Agreement), and note that, together, PNC Bank, Fireman's Fund Insurance Company, and R.N. Robinson & Sons, Inc. "have a sufficient collective interest to select counsel for and make operating decisions on behalf of the Secured Parties regarding the conduct of [this] Litigation."  *Id.* ¶ 5.

Considering the terms of the Agreement, the court concurs with the position of the Real Parties.  First, as to operating decisions, 75% of the voting interests of the Secured Parties control these decisions, and the voting interests are apportioned as follows:  Fireman's Fund Insurance Company (48.5%); PNC Bank (24.2%); R.N. Robinson & Sons, Inc. (18%); Holland & Knight LLP <u>and</u> the Law Offices of Frederick Huff (sharing 9.3%).  Def.'s Br. of Apr. 3, 2012, Ex. C ¶¶ 2, 9.  Thus, for operating decisions, such as the decision to substitute the Secured Parties for GIT or to ratify GIT as plaintiff, the Real Parties have 90.7% of the voting interests and they control operating decisions in this litigation.

As for choice of counsel, only 70% of the voting interests of the participants in the Agreement is required to make this decision.  Def.'s Br. of Apr. 3, 2012, Ex. C ¶ 7.  Under every settlement level for which participant interests are identified in the Agreement, the Real Parties possess at least 72.6% of the interests in this litigation.  *Id.* ¶¶ 1-3.  Thus, the Real Parties also possess the power to select counsel to represent the Secured Parties in this litigation.

Although this inescapable conclusion as to the powers afforded by the Agreement has been evident since *GIT I* issued on December 5, 2012, the Nominal Plaintiffs did not willingly cede control of this litigation to the Real Parties.  Instead, when the Real Parties attempted, through a defective notice, to assert their rights to control this litigation on February 8, 2013, the Nominal Plaintiffs countered with their own notice relying, in part, on supporting declarations from Mr. Kinghorn and Mr. Huff.  The court allowed the parties to brief the dispute by

means of the cross-motions currently before the court.

### B. The Nominal Plaintiffs' Attempts to Avoid the Plain Meaning of the Agreement

The Nominal Plaintiffs first attempt to distort this court's prior holdings. According to the Nominal Plaintiffs, "[g]iven this Court's current view that GIT's creditors are now *all* viewed as "real parties in interest" accordingly, [the Law Offices of Frederic Huff] and Kinghorn have significant interests in this matter thereby permitting their continued prosecution of this case." Nominal Plaintiffs' Mot. at 2 (emphasis added). That is not the holding of *GIT I*. The court reproduces here the key passage from *GIT I*:

> The court documents relied upon by plaintiffs and defendant show that GIT's bankruptcy effected a transfer of GIT's claims against MK to the Secured Parties. First, GIT's Second Amended Plan of Reorganization, and a subsequent clarification of that plan, vest the rights of GIT to claims against MK in the Secured Parties. Second, the Agreement Respecting Litigation shows that the parties entitled to net proceeds from GIT's claims against MK are the Secured Parties, not GIT. Third, GIT's reorganization plan states that any amount of net proceeds in the GIT-MK litigation that exceeds the claims of the Secured Parties against GIT (and the $125,000 paid to GIT's unsecured creditors) shall be distributed to GIT's unsecured creditors. Fourth, during MK's bankruptcy litigation, the proceeds from any suit against MK related to GIT's work on the DOE project were described by the bankruptcy judge as belonging to the creditors of GIT, not GIT. Fifth, in the GIT-MK litigation, the district court observed that GIT's sole role was to facilitate the litigation, not to share in any proceeds that might be obtained, according to the explicit terms of GIT's reorganization plan.

108 Fed. Cl. 169-70 (citations omitted). It is the Secured Parties that are the real parties in interest in this suit, and the Agreement governs their management of this

suit.  Just because one of the Secured Parties (Mr. Huff) and an equity holder in GIT (Mr. Kinghorn) might be able to benefit from a judgment won in this court does not mean that Mr. Kinghorn or Mr. Huff may flout the Agreement and its terms.  Nothing in the court's rulings in *GIT I* and *GIT II* supports the position advanced in the Nominal Plaintiffs's briefs.

The Nominal Plaintiffs also attempt to distort the terms of the Agreement itself:

> Specifically, due to GIT's prior recoveries and disbursements and due to GIT's adjudicated but yet uncollected entitlements pursuant to the [GIT-MK litigation], Kinghorn and LOFH (Huff) collectively have 27.4% of the allocated voting interests and rights under the Agreement Respecting Litigation.

Nominal Plaintiffs' Reply at 3 (footnote and citation omitted).  Even though the most gross misstatement in this passage is corrected in a footnote, where the Nominal Plaintiffs concede that Mr. Huff and Holland & Knight LLP <u>share</u> a 7.4% participant interest in settlements over $8.5 million (thus rendering the collective "27.4%" share figure for Mr. Kinghorn and Mr. Huff patently inaccurate), there is nothing in the Agreement which supports the Nominal Plaintiffs' assertion that previous and anticipated litigation recoveries somehow diminish the voting power of the Real Parties.  Nor have the Nominal Plaintiffs cited evidence to convince the court that the Agreement's terms are no longer in force.  Simply put, the Nominal Plaintiffs have no argument against the terms of the Agreement other than vague *ipse dixit*: "Nothing renders the Kinghorn and [Huff] interests and rights inferior such that they cannot ratify [the Nominal Plaintiffs] as Plaintiffs in this case." *Id.*

The court must reject the Nominal Plaintiffs' attempt to distort the Agreement and the effect of the transfer of claims prompted by GIT's bankruptcy.  The Real Parties possess the voting power to make operating decisions for the plaintiffs in this suit, and, per their instructions, the Secured Parties shall be substituted as plaintiffs in this suit proceeding under the names of nominal plaintiffs GIT and MK.  Real Parties' Mot. Ex. 1 ¶ 4.  The Secured Parties also possess the voting power to select counsel and have chosen Mr. Barbour to replace Mr. Schooley.  *Id.* ¶¶ 2, 5.  Thus, the attorney of record for plaintiffs is now Mr. Barbour.

### C. Joinder is Not Appropriate

In a final attempt to preserve a decision-making role in this litigation as well as a continuing role for Mr. Schooley, the Nominal Plaintiffs seek to be joined in this action. In one brief, it appears that GIT seeks to be joined as plaintiff to continue to represent the interests of Mr. Huff and Mr. Kinghorn. Nominal Plaintiffs' Mot. at 6 ("Thus, the ratified Plaintiffs should be permitted to continue prosecuting this case . . . to appropriately assert the rights and interests of [Mr. Huff] and [Mr.] Kinghorn per Rule 19, RCFC and/or Rule 20, RCFC."). In their reply brief, the Nominal Plaintiffs may be suggesting that Mr. Kinghorn and Mr. Huff should themselves be joined as parties, although the arguments in this regard are not particularly coherent. *See* Nominal Plaintiffs' Reply at 4 (seeking mandatory joinder because Mr. Huff and Mr. Kinghorn are "necessary parties"); *id.* at 6 (advocating for permissive joinder and describing Mr. Huff and Mr. Kinghorn as "permission parties to ratify [Nominal] Plaintiffs"). Irrespective of the manner of joinder proposed by the Nominal Plaintiffs, joinder of additional parties in this litigation is inappropriate.[8]

Joinder of GIT, if that is indeed an option proposed by the Nominal Plaintiffs, is inappropriate for the simple reason that post-bankruptcy GIT has no financial interest in claims arising from the DOE project. Those claims were transferred to the Secured Parties in the GIT bankruptcy litigation. *See GIT I*, 108 Fed. Cl. at 169-70. Absent a financial interest in this case, the only rationale that would require GIT to be joined in this action would be if the absence of GIT prevented the court from "accord[ing] complete relief among existing parties." RCFC 19(a)(1)(A). The Nominal Plaintiffs have presented no persuasive argument that removing GIT from a decision-making role in this litigation would impair this court's ability to render complete relief in this action. Mandatory joinder of GIT is therefore not appropriate under this court's rules. Permissive joinder is also not appropriate because GIT has no rights to assert in this suit. *See* RCFC 20(a)(1)(A) (stating that permissive joinder is limited to parties which "assert any right to relief").

As for Mr. Kinghorn, if the Nominal Plaintiffs indeed seek to join him as a

---

[8]/ The court also rejects the Nominal Plaintiffs' curious suggestion that the Real Parties' Motion to Substitute be deemed to be a motion to intervene as co-plaintiffs in this suit. Nominal Plaintiffs' Mot. at 6. Such an interpretation contravenes the clear goals, and title, of the Real Parties' Motion to Substitute.

party to this action, the Real Parties cite appropriate authorities that deny mandatory and/or permissive joinder to entities with merely *contingent* financial interests in the proceeds of suits in this court. *See* Real Parties' Reply at 5-9 (citing *United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 480 F.3d 1318 (Fed. Cir. 2007); *Fisherman's Harvest, Inc. v. United States*, 74 Fed. Cl. 681 (2006); *Franconia Assocs. v. United States*, 61 Fed. Cl. 335 (2004)). Mr. Kinghorn possesses no direct claim against the United States that can be adjudicated in this court, and his absence from this suit will not impair the court's ability to render complete relief to the existing parties in this action. No type of joinder of Mr. Kinghorn is therefore appropriate pursuant to this court's rules. The court notes, too, that the Agreement entered into by Mr. Kinghorn places control of this litigation in the hands of the Secured Parties; thus, in the court's view, joinder of Mr. Kinghorn could quite possibly violate the Agreement's terms and the conditions of GIT's bankruptcy. *See* Def.'s Br. of Apr. 3, 2012, Ex. C ¶¶ 2, 9.

As for Mr. Huff, if the Nominal Plaintiffs indeed seek to join him as a party to this action, the Real Parties argue that his status as one of the Secured Parties gives his interests adequate protection in this suit. Real Parties' Reply at 10-11. The court agrees. The Secured Parties are the real parties in interest in this suit and their interests are now represented by Mr. Barbour. Mr. Huff is thus represented in this suit, although, pursuant to the Agreement he signed, his voting interest among the Secured Parties is so small that he cannot, by himself, choose counsel or direct the litigation. Mandatory joinder is not appropriate, because complete relief may be afforded Mr. Huff and the other Secured Parties, and his interests in a judgment award from this court or a settlement are adequately protected. Additionally, as is the case for Mr. Kinghorn, the Agreement entered into by Mr. Huff places control of this litigation in the hands of those entities or individuals who constitute the Secured Parties and who hold 75% or more of the voting interests at a particular settlement level. Thus, in the court's view, joinder of Mr. Huff as a separate plaintiff could quite possibly violate the Agreement's terms and the conditions of GIT's bankruptcy. *See* Def.'s Br. of Apr. 3, 2012, Ex. C ¶¶ 2, 9.

As previously observed, the Nominal Plaintiffs' arguments regarding joinder are largely vague *ipse dixit* pronouncements that have no basis in law. To the extent that the Nominal Plaintiffs cite generally to *United Keetowah*, the analysis is perfunctory and unpersuasive. *See* Nominal Plaintiffs' Reply at 5 (drawing unspecified support from *United Keetowah* to conclude that Mr. Huff's and Mr. Kinghorn's interests are "direct and immediate," "legally protectable," and

12

"sufficiently affected" to mandate joinder under RCFC 19). Similarly, when the Nominal Plaintiffs cite generally to *Franconia Associates*, the argument is vague and unpersuasive as well with respect to permissive joinder under RCFC 20:

> As addressed in *Franconia Associates v. United States*, 61 Fed. Cl. 335 (2004), the two (2) criteria for joinder of permissive parties is easily satisfied where, as here, the rights of all parties arise from the same occurrence and transactions. In this matter, all parties to the Agreement Respecting Litigation are considered real parties in interest. Accordingly, Kinghorn and [Huff] have rights to relief equivalent to those of the "Substituting Secured Parties". The contention that neither Kinghorn nor [Huff] have sufficient rights to allow permissive joinder is wrong.
> The glaring flaw in the "Substituting Secured Parties[]" argument is that they claim their interests for substitution into this case based on the same grounds as they contend fails to give Kinghorn and [Huff] sufficient interest for permissive joinder. These contentions are entirely inconsistent.
> If the "Substituting Secured Parties" have sufficient interest to be considered real parties in interest for purposes of substitution, then Kinghorn and [Huff] must likewise have sufficient interest to be permissive parties. Therefore, the Kinghorn and [Huff] ratifications of Plaintiffs should be sufficient for this case to continue forward.

Nominal Plaintiffs' Reply at 6-7.

As explained *supra*, the rules for joinder relied upon by the Nominal Plaintiffs do not contemplate the joinder of Mr. Huff and Mr. Kinghorn simply because they may eventually assert rights to a portion of any judgment or settlement achieved in this case. These two individuals have no independent rights arising from the DOE project; their financial interests are already adequately represented in this suit by the Secured Parties and the Secured Parties' choice of counsel, Mr. Barbour. The Nominal Plaintiffs have presented no cogent or

persuasive argument that joinder in this case is warranted under this court's rules or applicable precedent.

The court notes that the Nominal Plaintiffs have offered no caselaw which supports joinder of Mr. Huff or Mr. Kinghorn in this case. A proportionate right to a judgment or settlement obtained through this litigation is a contingent interest which does not require joinder of these two individuals as parties, particularly where Mr. Huff and Mr. Kinghorn entered into an Agreement as to how their rights would be protected in this litigation. *See Fisherman's Harvest*, 74 Fed. Cl. at 688 (holding in that case that the advocates of joinder failed to demonstrate that complete relief would not be accorded the existing parties absent joinder, and failed to show that the interests of the entities proposed for joinder would be impaired absent joinder).

Furthermore, Mr. Huff and Mr. Kinghorn do not possess any right or claim independent of the claim asserted by the Secured Parties so as to make permissive joinder under RCFC 20 appropriate. In other words, theirs is not an asserted claim against the United States currently poised to proceed in this court, but a right that might eventually be asserted against the other participants to the Agreement. Thus, there is a valid distinction to be drawn between claims arising from the DOE project and the legal principles relevant to those claims, on the one hand, and GIT's creditors' potential claims to a share of any proceeds resulting from this litigation, on the other. The Real Parties are correct to assert that the transaction at issue in this suit, and the questions of law at issue in this suit, are not the same as the transactional context of legal claims that may eventually be adjudicated in a suit brought by Mr. Huff and/or Mr. Kinghorn should a settlement or judgment be obtained by the Secured Parties. *See* Real Parties Reply at 8-9 (citing RCFC 20(a)(1) and *Franconia Associates*, 61 Fed. Cl. at 336-38). For all of these reasons, joinder of Mr. Huff or Mr. Kinghorn in this action is not appropriate under either RCFC 19 or 20.

## CONCLUSION

The motion for substitution of the real parties in interest as plaintiffs in this litigation and for the substitution of Mr. Barbour for Mr. Schooley as counsel for plaintiffs is granted. Notice of the court's decision shall be communicated to the United States Court of Appeals for the Federal Circuit by the parties as required by the order issued in that appeal. Accordingly, it is hereby **ORDERED** that


(1) The Real Parties' Motion to Substitute the Real Parties in Interest/Motion to Substitute Counsel, filed May 24, 2013, is **GRANTED**;

(2) Plaintiffs' Ground Improvement Techniques, Inc. and MK-Ferguson Company Cross-Motion to Ratify Plaintiffs, filed June 7, 2013, is **DENIED**;

(3) The Clerk's Office is directed to **CORRECT** the docket to reflect the substitution of the real parties in interest as plaintiffs, pursuant to RCFC 17(a)(3), as shown in the caption of this opinion;

(4) The Clerk's Office is directed to **SUBSTITUTE** Mr. Robert G. Barbour, pursuant to RCFC 83.1(c)(4)(A)(i)(II), as the attorney of record for all plaintiffs in this case; and,

(5) Proceedings in this case, pursuant to the court's order of July 12, 2013, remain **STAYED** pending the resolution of the appeal before the Federal Circuit, and all provisions of that order remain in effect.

/s/Lynn J. Bush  
LYNN J. BUSH  
Senior Judge